SIGNED.

Dated: August 10, 2011



*Randolph J. Haines*

**Randolph J. Haines, Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 7 |
| ROSIRA A. CORREIA-SASSER, | CASE NO. 2:10-bk-17877-RJH |
| Debtor. | |
| JOHN ROGONE AND JASON ROGONE, | ADVERSARY NO. 2:10-ap-1632-RJH |
| Plaintiffs, | |
| vs. | |
| ROSIRA A CORREIA-SASSER, | MEMORANDUM DECISION |
| Defendant. | |

The Court has before it two opposing motions for summary judgment arising in the Chapter 7 case of Ms. Rosaria Correia-Sasser ("Ms. Correia" or "Defendant"). The Plaintiffs' motion for summary judgment ("Plaintiffs' Motion") asks the Court to find that debts represented by two final judgments, one entered in California Superior court ("California judgment") and the other entered in Arizona Superior court ("Arizona judgment") in favor of the Debtor's sons John Rogone and Jason Rogone ("Plaintiffs"), are not subject to the discharge pursuant to §§ 523(a)(4) and 523(a)(6).[1]

Ms. Correia filed a response and a cross-motion for partial summary judgment ("cross-

---
[1] Except as otherwise indicated, all chapter, section and rule references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

motion"). The Defendant's response suggests the California Superior Court's conclusions do not establish elements necessary to satisfy § 523(a)(4). The response further suggests the Arizona Superior Court's conclusions do not establish element necessary to satisfy § 523(a)(6). The response further suggests the Plaintiffs' reliance on collateral estoppel (hereinafter "issue preclusion") is inapplicable as the issues litigated in the previous non-bankruptcy proceedings differ from those necessary to satisfy defalcation or willful and malicious injury under §§ 523(a)(4) and 523(a)(6), respectfully. The Defendant also argues issue preclusion does not apply with respect to the Arizona judgment because it is not a final judgment, as an appeal is currently pending with the Arizona Court of Appeals. Further, the Defendant's cross-motion suggests Ms. Correia was not found liable for defalcation in the California judgment and therefore she is entitled to judgment as a matter of law regarding non-dischargeability under § 523(a)(4).

This Court finds and concludes that the issues actually litigated in the previous non-bankruptcy cases are exactly the same issues as those in the present case. The bankruptcy court is required to recognize issue preclusion and give preclusive effect to the findings of the California and Arizona state courts. The bankruptcy court must simply determine whether the issues previously litigated satisfy the requirements of §§ 523(a)(4) and 523(a)(6). The Defendant's actions did indeed satisfy the requirements of §§ 523(a)(4) and 523(a)(6) and thereby the money judgments owed to the Plaintiffs are not dischargeable. The Plaintiffs' motion for summary judgment is granted. The Defendant's cross-motion is denied.

**Factual Background**

The underlying judgments against Ms. Correia related to (1) fiduciary breaches as trustee of the Alfredo Correia and Mary F. Correia Trust (the "Trust") and (2) subsequent fraudulent transfers made with the intent to hinder, delay, or defraud the Plaintiffs in collection of the first, California judgment. The Trust identified the Defendant/Debtor Ms. Correia as trustee and her three sons, John Rogone, Jason Rogone, and James Shaw, as equal beneficiaries. John and

Jason Rogone have requested this court find those money judgments non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6).

The terms of the Trust provided that upon the death Alfredo Correia, the Defendant and the Trust should receive real property in the Point Loma area of San Diego, California. The real property comprised two adjacent lots on Dickens Street (the "Property" or "Lots 11 and 12"). The Trust terms stated Lot 11 was left to the Defendant "as trustee for the benefit of John Rogone, Jason Rogone, and James Shaw." Lot 12 was left to the Defendant "free of the Trust." At the time it entered the Trust, Lot 11 was unimproved while Lot 12 included a home and other improvements.

In 1991, the Defendant partnered with Point Loma Properties LLP (the "Developer") to build nine condominiums on the Property. The Property, valued at $620,000, was "sold" to the Developer for $420,000. The Defendant reinvested the remaining $200,000 into development of the Property and the Trust and the Defendant were each given an equal interest in the development valued at $310,000.[2] Rather than distribute all or even part of the sale proceeds to the Trust, which totaled $383,513.95 after paying her broker's commission, the Defendant kept all $383,513.95, effectively shifting the entire risk of the investment to the Trust and its beneficiaries. When the Developer failed to develop the property and failed to repay the $200,000 plus interest, Ms. Correia filed suit against the Developer. In her individual capacity, the Defendant settled with the Developer for $60,000. She again kept a portion of the proceeds, distributing only $10,000 to each Trust beneficiary, keeping $30,000 for herself. When the dust settled, the beneficiaries received only $30,000 from the Trust.

**The California Judgment**

In 2006, the California Superior Court in San Diego County ("California court") found

---

[2] Ms. Correia asserted during the California proceeding the she had provided the Developer with $200,000 in "Seller Carry-Back Financing." The California court reviewed the "loan documents" and concluded the agreement was more akin to a joint-venture in which Ms. Sasser invested the $200,000.

3

that while acting in her capacity as trustee, Ms. Correia committed no less than five breaches of her fiduciary duty. The California court found the Defendant breached her fiduciary duty by (1) investing her children's money in a highly speculative and risky investment, (2) taking all proceeds and placing the risk of investment solely on the Trust, (3) failing to provide annual accountings, (4) failing to give the Trust beneficiaries access to Trust records, and (5) failing to distribute the remaining Trust property upon termination of the Trust. The court removed the Defendant as trustee.[3] Further, the court awarded the Plaintiffs a collective judgment of $414,003 against the Defendant.[4] An amended judgment providing each plaintiff an additional $4,647.60 for costs was entered in March 2007 (collectively "California judgment"). In August 2007, the Plaintiffs caused the California judgment to be registered in Arizona, recording it with the Maricopa County Recorder's Office in October 2007.

**The Arizona Judgment**

In October 2007, Plaintiffs filed a complaint against the Defendant, her current husband John Sasser, and various others,[5] with the Superior Court of Maricopa County, Arizona ("Arizona court"). The complaint alleged that various asset transfers by the Defendant and her husband (the "Sassers"), made while the California action was pending, violated Arizona's Uniform Fraudulent Transfer Act ("UFTA"). The complaint asserted that during the pendency of the California action the Defendant recognized she was not likely to prevail in her defense and before the conclusion of that case, she and her husband transferred virtually all of Ms. Correia's assets in an attempt to hide them from the Plaintiffs.

---

[3] On June 15, 2007, the Probate Court appointed John and Jason Rogone successor co-trustees of the Trust with written consent of James Shaw.

[4] As co-trustees, the Defendants have assumed a fiduciary duty to collect on the California judgment. Upon collection of the California judgment, James Shaw will become an additional trustee.

[5] The court found no evidence that Ms. Correia's attorney, Stephen Rich, or his law firm Herbert Schenk, was either responsible for misrepresentations or advised by the Defendant and her husband as to their true intent to hinder, delay, or defraud Plaintiffs in the collection of their claim/judgment.

4

After an advisory jury found for the Plaintiffs in July 2009, the Plaintiffs and the Sassers each submitted proposed judgments. The Arizona court found by clear and convincing evidence the transfers were made with actual intent to hinder, delay, or defraud the Plaintiffs in the collection of the California judgment. The Arizona court set aside certain transfers of properties in which the Defendant had an interest and awarded the Plaintiffs attorneys' fees as well as costs. The avoided transfers included:

a. The transfer of a single family dwelling commonly referred to as 11574 East Bronco Trail, Scottsdale, Arizona ("Bronco Trail Property"). As a result of the avoidance action, ownership of the Bronco Trail Property reverted to the Correia Estate Revocable Trust. Ms. Correia is the trustee and lifetime beneficiary of the Correia Estate Revocable Trust.

b. The transfer of a single family dwelling commonly referred to as 2265 Marion Anderson Road, Hot Springs, Arkansas ("Hot Springs Property"). This property was acquired by the Sassers as joint tenants by the entirety and during the California proceedings was transferred by the couple to John Sasser as trustee of the John K Sasser Revocable Trust. The John K Sasser Revocable Trust provides Ms. Correia with a ten (10) year life estate in this property provided she survives her husband. The Arizona court ordered John Sasser to convey the Defendant's pre-transfer, one-half interest in the Hot Springs Property to the Plaintiffs.

c. The Sassers encumbered a single-family home in Phoenix, Arizona, with deeds of trust securing equity lines of credit in excess of $400,000. This dwelling is Ms. Correia's primary residence and has been her sole and separate property since September 1993.

d. The Sassers entered into a postnuptial agreement wherein the Defendant transferred, conveyed, relinquished, waived, and forever released all right, title, claim and interest she had, or in the future may acquire, as community, quasi-community, or otherwise in 3860 E Grandview, Phoenix, Arizona, 20420 N 17th Street, Phoenix, Arizona, 5122 E Pershing, Scottsdale, Arizona, 22046 N 44th, Phoenix, Arizona, and 2358 E Marmora, Phoenix, Arizona.

e. In the postnuptial agreement, the Defendant also waives spousal support and her rights to reimbursement.

In November 2009, in addition to avoiding the above referenced transfers and setting aside portions of the postnuptial agreement,[6] the Arizona court entered a judgment awarding $121, 950 in attorneys' fees and $3,237.21 in costs for the Plaintiffs and against the Defendant, individually and as trustee of the Correia Estate Revocable Trust, and John Sasser, individually

---

[6] The postnuptial agreement was set aside as to all the Defendant's property rights, title, interests, and claims which she therein waived, conveyed, surrendered, relinquished, transferred, or released, expressly or otherwise, to the extent necessary to collect the judgment.

and as trustee of the John K. Sasser Estate Revocable Trust, and their alter egos E Bronco Trail Rental LLC, and Hot Springs LLP, for a total of $125,087.21. The judgment also ordered the Bronco Trail Property and the Hot Springs Property be sold and the net proceeds applied to the satisfaction of the California and Arizona judgments.

**Analysis**

**A.   Defalcation**

<u>Re-litigation of whether a breach of fiduciary duty occurred is barred by issue preclusion.</u>

The California Court determined the Defendant breached her fiduciary duty to the Plaintiffs and that issue may not be re-litigated in this court under the doctrine of issue preclusion, formerly known as collateral estoppel.[7]

Issue preclusion applies in bankruptcy dischargeability proceedings to preclude relitigation of nonbankruptcy court findings that are relevant to dischargeability.[8] Issue preclusion bars relitigation of an issue or fact that (1) is identical to a fact or issue determined in an earlier proceeding, (2) was actually decided by a court in an earlier action, (3) was necessary to the judgment in such action, (4) there was a final judgment on the merits, and (5) the parties were the same or in privity.[9] The Full Faith and Credit Act requires that federal courts give state court judgments the same preclusive effect those judgments would enjoy under the law of the

---

[7] "Issue preclusion" was "often called 'collateral estoppel'" prior to the "recent evolution of concepts of res judicata under the now-dominant *Restatement (Second) of Judgments*." *Paine v. Griffin (In re Paine),* 283 B.R. 33, 38 (9th Cir. BAP 2002). "In the decades since 1980, the Supreme Court has embraced the *Restatement (Second)* as stating the basic federal law of preclusion and has consistently urged courts to use the terms *claim preclusion* and *issue preclusion*, rather than *res judicata* and *collateral estoppel*, as they apply *Restatement (Second)* analysis." Christopher Klein and Lawrence Ponoroff, *Principles of Preclusion and Estoppel in Bankruptcy Cases*, 79 AM. BANKR. L.J. 839, 843 (2005).

[8] *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991).

[9] *Lopez v. Emergency Service Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 104 (9th Cir. BAP 2007), citing *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). RESTATEMENT (SECOND) OF JUDGMENTS §17 cmt. c (1982).

state in which the judgment was rendered.[10] California law applies issue preclusion based on the establishment of the same five elements listed above.[11]

The California Court found that a fiduciary relationship existed between Ms. Correia and her three sons as Trustee and Beneficiaries of the Alfredo Correia and Mary F. Correia Trust, respectively. The California Court further found that Ms. Correia breached that fiduciary duty no less than five times when she invested the Trust property in a highly speculative and risky investment scheme. The California Court found that Ms. Correia's breaches resulted in injury to the Trust beneficiaries, ultimately awarding them $414,003 collectively (for damages) and $4,647.60 individually (for costs).

The issues litigated in the California case with respect to breach of fiduciary duty are identical to those presented before this court. Under 11 U.S.C. § 523(a)(4), a debt is not discharged if it arose from a defalcation while acting in a fiduciary capacity. The California action was brought by the Plaintiffs solely because of the Defendant's breach of her fiduciary duty as Trustee. The issue was indeed litigated and was not only essential to the prior judgment, but in fact, the sole reason for the judgment. As such, whether a breach of fiduciary duty occurred has already been decided and that issue is barred from being re-litigated by the doctrine of issue preclusion.

### An innocent breach of fiduciary duty when there is an express trust constitutes a defalcation under 11 U.S.C. §523(a)(4).

The Defendant's breach of her fiduciary duty constitutes defalcation under 11 U.S.C. §523(a)(4) regardless of whether or not the breach was innocent. "In the context of § 523(a)(4), the term 'defalcation' includes *innocent*, as well as intentional or negligent defaults so as to

---

[10]*Lopez, supra*, at 105, citing 28 U.S.C. § 1738.

[11]*Baldwin v. Kilpatrick (In re Baldwin)*, 249 F.3d 912, 917-18 (9th Cir. 2001), citing *Lucido v. Superior Court*, 51 Cal.3d 335, 340, 272 Cal. Rptr. 767, 768, 795 P.2d 1223, 1225 (1990).

reach the conduct of all fiduciaries who were short in their accounts."[12] The term defalcation is not synonymous with fraud or embezzlement, and to hold so would render its presence in the Bankruptcy Act meaningless.[13]

In the present case, the issue of whether a breach occurred was decided by the California Court. That court found that in her actions as Trustee, the Defendant committed no less than five breaches of her fiduciary duty to the Trust Beneficiaries. As the Ninth Circuit determined in *Baird*, an innocent breach suffices for purposes of defalcation. In this case the Defendant sold Trust property for her own benefit, to the detriment of the Trust. She also failed to provide accurate accounting at the request of the Plaintiffs; had she actually done so, the Trust accounting would have shown the Trust property value had been completely destroyed. This was the exact situation the Ninth Circuit reviewed in *Baird*, where it found defalcation reached even innocent fiduciaries who were "short on their accounts." 114 B.R. 198, 204. By selling the Trust's only asset (Lot 11) and keeping the sale proceeds for her own use, Ms. Correia essentially withdrew money from the Trust and never replaced it. That she allegedly did so innocently is not important; it is only important that she actually took the sale proceeds at the detriment of the Trust.

Other jurisdictions have determined 11 U.S.C. § 523(a)(4) requires something *more* than an innocent breach to constitute defalcation. The Fifth Circuit requires "a recklessness standard" be met before a breach rises to the level of defalcation under 11 U.S.C. § 523(a)(4).[14] In *Harwood*, a Chapter 7 debtor challenged the bankruptcy court's determination that his debts were non-dischargeable as they were incurred through defalcation while acting as a fiduciary to

---

[12] *In re Baird*, 114 B.R. 198, 204 (9th Cir. 1990)(emphasis added); *Lewis v. Scott*, 97 F.3d 1182, 1186-1187 (9th Cir. 1996)("[a]n individual may be liable for defalcation without having intent to defraud"). In *Lewis v. Scott*, the 9th Circuit Court of Appeals found no showing of bad faith was required for defalcation, overruling the Bankruptcy Appellate Panel decision in *In re Martin*.

[13] *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511 (2nd Cir. 1937) (defalcation must cover defaults other than deliberate malversations or it "add[s] nothing to the words fraud and embezzlement").

[14] *FNFS, Ltd. v. Harwood*, 637 F.3d 615, 624 (5th Cir. 2011).

a partnership. *Id*. at 617. The debtor, Harwood, as director of a limited partnership loaned himself large amounts of money for his own personal use. *Id*. The court found the debtor had made no significant effort to pay down the principal amount of his debts and further, he failed to record any deeds of trust he executed to receive the loans. *Id*. at 618. The court found the debtor was a sophisticated banker who knew or should have known his actions, while beneficial to him, were detrimental to the partnership to which he owed a fiduciary duty as director. *Id*. at 625. The court held the debts to be non-dischargeable because the debtor's actions rose above the level of negligence to recklessness; he knew or should have known, based on his experience as a banker, that he was breaching his fiduciary duty satisfying the requirements of defalcation under 11 U.S.C. §523(a)(4). *Id*. at 626.

The First Circuit has also determined defalcation under 11 U.S.C. § 523(a)(4) "requires some degree of fault, akin to fraud," but without a specific intent to commit the act.[15] According to the decision in *Baylis*, the inclusion of "defalcation" in 11 U.S.C. §523(a)(4) lessens the threshold requirement for non-dischargeable debts from "one of criminal or civil fraud to something less;" a creditor doesn't have to prove a debtor acted knowingly or willfully, but his actions must have come close. *Id*. at 20. The Court stated that defalcation could be presumed from a breach of the duty "not to act in the fiduciary's own interest when that interest comes or may come into conflict with the beneficiaries' interest." *Id*. "[W]hen a trustee acts in his own interest in connection with the performance of his duties as trustee . . . his interest must yield to that of the beneficiaries." *Id*. at 21. In *Baylis*, the debtor ("Baylis") was an attorney who created a trust for a client and ultimately became co-trustee along with the then-deceased client's daughter. *Id*. at 13-14. Baylis mismanaged the trust and ultimately the beneficiaries forced him and his co-trustee to sell the trust property. *Id*. at 14. The court found Baylis knowingly breached his duties by not selling the properties and by persuading his co-trustee not to sell. *Id*. 21. The court found Baylis breached his duties by inviting a lawsuit against the trust and using trust funds to defend and settle lawsuits brought against him personally. *Id*.

---

[15]*Quivillon v. Baylis*, 313 F.3d 9, 17-18 (1st Cir. 2002).

But the Ninth Circuit has determined that an innocent breach of fiduciary duty can constitute defalcation while other Circuits require a showing of negligence or even recklessness. This Court is bound by the holdings in *Baird* and *Lewis v. Scott*, requiring only an innocent breach to satisfy 11 U.S.C. § 523(a)(4). As such, when another Court has held that Ms. Correia indeed breached her fiduciary duty, the law is clear that even an innocent breach satisfies the defalcation threshold in the Ninth Circuit. Whether Ms. Correia breached her duty as Trustee is not for this court to decide. The doctrine of *issue preclusion* bars this court from determining if a breach of duty occurred because this issue was already adjudicated in California. The California court heard evidence and decided that Ms. Correia did indeed breach her duty as Trustee. No further inquiry into this issue is necessary or appropriate. The court acknowledges the California court's determination that Ms. Correia breached her duty and further acknowledges that pursuant to the decisions in *Baird* and *Lewis v. Scott*, that breach found by the California court qualifies as defalcation. As such, the California judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

### B. Willful and Malicious Injury

<u>An actual fraudulent transfer satisfies the requirements of 11 U.S.C. §523(a)(6) and renders a debt not dischargeable for willful and malicious injury.</u>

The actions of Ms. Correia, which were used by the Arizona Court to establish her actual intent to hinder, delay, or defraud the Plaintiffs, also satisfy the requirements of 11 U.S.C. § 523(a)(6) rendering that judgment not dischargeable. Arizona law applies the doctrine of issue preclusion based on the same five elements identified above.[16]

Under Arizona law, a transfer is fraudulent as to a creditor, if the debtor made the transfer *with actual intent* to hinder, delay, or defraud any creditor. Arizona Revised Statutes ("A.R.S."), § 44-1004(A)(1)(emphasis added). To determine "actual intent," the Arizona

---

[16]*Cagney v. Smith (In re Cagney)*, 2008 WL 8444800, *6 (9th Cir. BAP 2008)(unpublished), citing *Hullet v. Cousin*, 63 P.3d 1029, 1035-36 (Ariz. 2003).

10

legislature provided guidance by providing factors that may be considered. These factors include: the transfer of property to an insider; the continued possession of the property by the debtor after the transfer; the existence or threat of a lawsuit before the transfer; the transfer of substantially all of the debtor's assets; the transfer occurred shortly before a substantial debt was incurred. A.R.S. § 44-1004(B). The Arizona court found Ms. Correia transferred substantially all of her property and property interests to an insider, her husband, but retained some control over those properties. She did this in an attempt to protect her assets from an actual lawsuit in which she was likely to incur a large debt, the California lawsuit. The Plaintiffs' California lawsuit was filed before the transfers and only when Ms. Correia felt she was likely to lose did she transfer her property interests. The Arizona court found that Ms. Correia's actions equated to actual intent to hinder, delay, or defraud the Plaintiffs and avoided all the transfers made by Ms. Correia and also awarded the Plaintiffs costs and attorneys' fees; a total money judgment of $125,087.21.

The actions of Ms. Correia equate to willful and malicious injury to the Plaintiffs and the Plaintiffs' property. A malicious injury, as that term is used in 11 U.S.C. § 523(a)(6), is one caused by a wrongful act done intentionally without just cause or excuse that necessarily causes injury.[17] The term "willful" requires "the actor's deliberate act with knowledge that the act is substantially certain to cause injury."[18]

In this case the facts are clear and the Arizona court has already decided the required elements needed to show a willful and malicious injury occurred; no further finding of fact by this court is required. The Arizona court found that Ms. Correia acted wrongfully when she voluntarily and intentionally transferred her property and property interests. The transfers were made with the actual intent to hinder, delay, or defraud the Plaintiffs. The action injured the

---

[17] *In re Sicroff*, 401 F.3d 1101, 1106 (9th Cir. 2005); *In re Jercich*, 238 F.3d 1202, 1209 (9th Cir. 2001).

[18] *Jercich*, *supra*, at 1208, citing *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998) and *McIntyre v. Kavanaugh*, 242 U.S. 138, 141-42 (1916).

Plaintiffs in their attempts to recover the California judgment. The judgment awarded to the Plaintiffs by the Arizona court is a debt incurred by Ms. Correia because of willful and malicious injury to another entity or the property of another entity and is therefore not dischargeable under 11 U.S.C. § 523(a)(6).

### C. Finality for Issue Preclusion

Because the Arizona court entered a final judgment determining Ms. Correia's actions qualified as fraudulent transfers, this Court is prohibited from re-litigating those issues pursuant to the doctrine of issue preclusion. The Arizona judgment was generally conclusive regarding any issues that might be litigated regarding whether a willful and malicious injury occurred that would render the debt not dischargeable under 11 U.S.C. § 523(a)(6). In fact, the issues are identical to those presented here and essential to the Arizona judgment.

This Court recognizes that the Arizona judgment is currently on appeal, but the judgment is nonetheless final for purposes of issue preclusion. In Arizona, appellate jurisdiction is limited to final judgments disposing of all claims and all parties. *Musa v. Adrian*, 636 P.2d 89, 90 (Ariz. 1981). In the Arizona case, the court addressed all claims by all parties. The mere fact that Ms. Correia was able to appeal the judgment of the Arizona court established the fact that the Arizona court delivered a final and appealable judgment. That right of appeal does not affect the finality of the judgment.[19] Because this was a final judgment, issue preclusion applies to the findings by the Arizona court on the issues related to the fraudulent transfers of Ms. Correia's property and property interests. Under the Full Faith and Credit Act, this Court is barred from permitting a relitigation of any of those issues.

---

[19]"For purposes of *issue preclusion*, as opposed to *claim preclusion*, the requirement of a final judgment is relaxed to include a 'prior adjudication of an issue that is determined to be sufficiently firm to be accorded preclusive effect' so long as it was eligible for appellate review. The pendency of an appeal does not affect finality." Klein and Ponoroff, *supra* note 7, at 844-45. *See Southern Leasing Corp. v. Tufts*, 167 Ariz. 133, 134-35, 804 P.2d 1321, 1322-23 (App. 1991), citing RESTATEMENT (SECOND) JUDGMENTS § 28 (lack of finality exists only when party could not have obtained review of the judgment in the prior action); *see also Grynberg v. Shaffer*, 216 Ariz. 256, 259-60 (App. 2007)("finality is not negated by a pending appeal").

**Conclusion**

This Court finds that the Plaintiff has met its burden by demonstrating that there is no genuine dispute to any material fact in this case. The California court found a breach of fiduciary duty occurred and the Ninth Circuit has determined any breach satisfies the requirements of defalcation under 11 U.S.C. § 523(a)(4). The Arizona court concluded that the Defendant transferred property with the actual intent to hinder, delay, or defraud the Plaintiffs and those actions satisfy the requirements of willful and malicious injury under 11 U.S.C. § 523(a)(6). The debts incurred fall into the exceptions to discharge under 11 U.S.C. §§ 523(a)(4) and 523(a)(6), respectively. Ms. Correia's cross motion for summary judgment is denied, the Plaintiffs' motion for summary judgment is granted, and Plaintiff's counsel is requested to upload an appropriate form of final judgment to that effect.

DATED AND SIGNED ABOVE